# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ARTHUR MARTIN GONZALES,

          Plaintiff,

v.                                       No. CV 21-111 CG

KILOLO KIJAKAZI,[1]
Commissioner of the
Social Security Administration,

          Defendant.

## **MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Plaintiff Arthur Martin Gonzales's *Motion to Reverse and Remand for a Rehearing With Supporting Memorandum* (the "Motion"), (Doc. 20), filed September 29, 2021; Defendant Commissioner Kilolo Kijakazi's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 26), filed January 27, 2022; and Mr. Gonzales's *Reply in Support of Plaintiff's Motion to Reverse and Remand for a Rehearing* (the "Reply"), (Doc. 27), filed February 11, 2022.

In his Motion, Mr. Gonzales asks the Court to vacate the Commissioner's decision denying Social Security benefits, and to remand this case for a rehearing. (Doc. 20 at 26). The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because ALJ Gontis erred by failing to discuss whether the opinion of Mr. Gonzales's treating provider was entitled to controlling weight, the Court finds Mr.

---

[1] Kilolo Kijakazi was appointed Acting Commissioner of the Social Security Administration on July 9, 2021.

Gonzales's Motion shall be **GRANTED**, and this case shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

## I.     Procedural History

Mr. Gonzales filed an application for disability insurance benefits ("DIB") on September 9, 2015, alleging disability beginning September 1, 2014. (Administrative Record "AR" 1439). In his application, Mr. Gonzales claimed he was unable to work due to PTSD with major depressive disorder and alcohol abuse, a bilateral knee condition, a bilateral wrist condition, bilateral hearing loss, IBS, GERD, gout, external hemorrhoids, tinnitus, and sleep apnea. (AR 101). This is the second time Mr. Gonzales has challenged the denial of his Social Security benefits before this Court; the prior agency decision was reversed and the case was remanded. *See Gonzales v. Saul*, 1:19-cv-554 CG (Doc. 24).

### A.  First Hearing

Mr. Gonzales's application was denied initially on August 9, 2016, and upon reconsideration on December 14, 2016. (AR 123, 138). Mr. Gonzales requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 18, 2018, before ALJ Stephen Gontis. (AR 56, 1439). At the hearing, Mr. Gonzales appeared before ALJ Gontis with his attorney, Laura Johnson, and impartial Vocational Expert ("VE") Nicole King. ALJ Gontis issued an unfavorable decision on October 9, 2018, finding Mr. Gonzales not disabled at any time between the alleged disability onset date and the date of his decision. (AR 1449).

On October 11, 2018, Mr. Gonzales requested review of ALJ Gontis's decision before the Appeals Council. (AR 6). On November 30, 2018, Mr. Gonzales submitted

the evaluation and opinion of Robert Krueger, PhD, to the Appeals Council. (AR 14). On December 28, 2018, Mr. Gonzales also submitted a concurring letter from Elizabeth Davidson, MD. (AR 10). The Appeals Council denied review of ALJ Gontis's decision on April 17, 2019. (AR 1).

On June 14, 2019, Mr. Gonzales appealed the Commissioner's decision to the United States District Court for the District of New Mexico. *See Gonzales*, 1:19-cv-554 CG (Doc. 1). On March 18, 2020, the Court granted Mr. Gonzales's motion to remand the case, finding that the Appeals Council erred in denying review of the new evidence Mr. Gonzales submitted—Dr. Krueger's evaluation and opinion, as well as Dr. Davidson's concurring opinion—because it was "new, material, and chronologically pertinent" evidence. (AR 1480); *Gonzales*, 1:19-cv-554 CG (Doc. 24 at 14).

### B. Second Hearing

Mr. Gonzales appeared before ALJ Gontis for a second time on November 10, 2020, via phone due to the covid-19 pandemic. (AR 1376). Mr. Gonzales's attorney Laura J. Johnson, and impartial VE Thomas A. Greiner, were also present. (AR 1376). ALJ Gontis issued an unfavorable decision on December 15, 2020, finding Mr. Gonzales not disabled at any time between the alleged disability onset date and the date of his decision. (AR 1393). Pursuant to 20 C.F.R. § 404.984, this decision by ALJ Gontis is the final decision of the Commissioner.

Mr. Gonzales now argues ALJ Gontis erred in four respects: (1) he failed to account for all the limitations found by state agency non-examining consultants Paul Cherry, PhD, and Bernard Pearce, PhD; (2) he failed to properly weigh the opinions of consultative examiner Robert Krueger, PhD; (3) he failed to properly weigh the opinions

of treating psychiatrist Elizabeth Davidson, MD; and (4) he ignored the Appeals Council mandate vacating the prior decision. (Doc. 20 at 2).

## II.     Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Hum. Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or to show . . . that she has done so, are also grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *See Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision. *See* 42 U.S.C. § 405(g) (2018). Therefore, when the Appeals Council denies review, the ALJ's decision becomes the Commissioner's final decision for purposes of judicial review. *Threet v. Barnhart*, 353 F.3d 1185, 1187 (10th Cir. 2003) (citing *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994)).

"Substantial evidence is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Doyal*, 331 F.3d at 760 (quoting *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir.1989)) (internal quotation marks omitted). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (quoting *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988)) (internal quotation marks omitted). While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Sisco v. United States Dep't of Health and Human Servs.*, 10 F.3d 739, 741 (10th Cir.1993); *Washington*, 37 F.3d at 1439). However, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)) (internal quotation marks omitted).

### III.    Applicable Law and Sequential Evaluation Process

For purposes of DIB, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). In order to determine whether a claimant is disabled, the Commissioner follows the five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520.

At the first four steps of the SEP, the claimant bears the burden of showing (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) meet or equal one of the "listings" of presumptively disabling impairments found in 20 C.F.R. § 404, subpt. P, app. 1.; or (4) she is unable to perform her "past relevant work." 20 C.F.R. § 404.1520 (a)(4)(i–iv); *see also Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation. 20 C.F.R. § 404.1520(g)(1); *Grogan*, 399 F.3d at 1261. At step five, the Commissioner bears the burden of showing that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## IV.    Background

In his application, Mr. Gonzales claimed he was unable to work due to PTSD with major depressive disorder and alcohol abuse, a bilateral knee condition, a bilateral wrist condition, bilateral hearing loss, IBS, GERD, gout, external hemorrhoids, tinnitus, and sleep apnea. (AR 101). At step one, ALJ Gontis determined Mr. Gonzales had not engaged in any substantial gainful activity since December 20, 2015, the alleged disability onset date. (AR 1378). At step two, ALJ Gontis found Mr. Gonzales had the severe impairments of depression, anxiety, and PTSD. (AR 1379).

At step three, ALJ Gontis determined Mr. Gonzales's impairments, solely or in combination, did not meet or equal one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, or 404.1526. (AR 1381). ALJ Gontis then found Mr.

Gonzales has the RFC to perform a full range of work at all exertional levels but with a limitation to performing simple, routine tasks; only occasional interaction with supervisors, co-workers, and the public; and tolerating few changes in a routine work setting. (AR 1383). ALJ Gontis also found that Mr. Gonzales's time off task can be accommodated by normal breaks. (AR 1383).

In formulating Mr. Gonzales's RFC, ALJ Gontis stated he considered his symptoms and the extent to which those symptoms could reasonably be accepted as consistent with objective medical and other evidence, as required by 20 C.F.R. § 404.1529 and Social Security Ruling ("SSR") 16-3p. (AR 1383). ALJ Gontis stated he also considered opinion evidence, consistent with the requirements of 20 C.F.R. § 404.1527. (AR 1383). He concluded that while Mr. Gonzales's impairments could be expected to cause his alleged symptoms, the intensity, persistence, and limiting effects Mr. Gonzales described were not entirely consistent with the evidence in the record. (AR 1384).

In evaluating the evidence, ALJ Gontis gave significant weight to state agency medical consultants Craig Billinghurst, MD, and Karl K. Boatman, MD, stating that they "have program knowledge and are experts in disability evaluation." (AR 1386). Additionally, he found their opinions "supported by a review of the record." (AR 1386). For the same reasons, ALJ Gontis gave significant weight to the opinions of state agency psychological consultants Paul Cherry, PhD, and Bernard Pearce, PhD.

ALJ Gontis afforded partial weight to the overall opinion of Nguyen H. Park, PA-C, but he gave significant weight to Mr. Park's finding that Mr. Gonzales's "wrist dysfunction, knee dysfunction, arthritis, headaches, and sleep apnea" did not limit his

ability to work, as he found this finding "generally consistent with the record as a whole."
(AR 1386). ALJ Gontis gave limited weight to Mr. Park's conclusion that Mr. Gonzales's
gastrointestinal issues limit his ability to work, as he found it is "not well-supported" and
"is not consistent with the record as a whole." (AR 1387).

ALJ Gontis gave limited weight to the opinions of treating psychiatrist Dr.
Davidson, stating that her opinions "are offered on checkbox forms without any detailed
explanation" to support the "marked" restrictions assessed. (AR 1387). ALJ Gontis also
stated that Dr. Davidson's opinions are not supported by her own treatment notes, and
"are not consistent with the record as a whole, including the lack of any regular
emergency care or in-patient hospitalizations for mental health exacerbations." (AR
1387).

ALJ Gontis afforded limited weight to the opinions of Dr. Krueger, noting that "Dr.
Krueger only examined [Mr. Gonzales] once and did not provide a detailed explanation
to support a finding that [Mr. Gonzales] would have regular absenteeism." (AR 1387).
ALJ Gontis explained that Dr. Krueger's opinion was also "not well-supported" by his
own examination of Mr. Gonzales and is "not consistent with the record as a whole."
(AR 1387-1388). ALJ Gontis noted that Dr. Krueger's opinion is also "not supported by
Dr. Davidson's treatment notes." (AR 1389).

ALJ Gontis gave limited weight to the opinion of consultative examiner Warren
Steinman, PhD, as he found his opinion "not fully supportive by the consultative
examination" and "not consistent with the record as a whole, including the evidence of
[Mr. Gonzales's] stability with his conservative course of treatment." (AR 1389). ALJ
Gontis afforded limited weight to the opinion of psychologist Bonnie Chavez, PhD,

stating that her opinion "is based on only a single examination of [Mr. Gonzales] and is vague," and that it, like the opinion of Dr. Steinman, is "not fully consistent with the record as a whole." (AR 1389). ALJ Gontis also gave limited weight to the opinion of audiologist Mistie C. Williamson, stating that her opinion that Mr. Gonzales may have trouble working in noisy environments is "not fully consistent with the record as a whole, including the lack of consistent treatment for hearing issues." (AR 1390).

ALJ Gontis afforded limited weight to the opinion of James Thiel, MD, stating that it "appears to rely heavily on [Mr. Gonzales's] reports of symptomology rather than any specific clinical findings," and is "not consistent with the record as a whole" which shows evidence of controlled sleep apnea and treated IBS. (AR 1390). ALJ Gontis also gave limited weight to the opinion of consultative examiner Em Ward, MD, because Dr. Ward's statement was "rather vague" and "fail[s]" to confirm whether or not [Mr. Gonzales's] wrist and knee issues cause work restrictions." (AR 1390).

ALJ Gontis gave limited weight to the third-party statement from Mr. Gonzales's father, stating that he "is not impartial" and provides only "a lay opinion based upon observation and not medical findings." (AR 1391). ALJ Gontis also afforded limited weight to Mr. Gonzales's Global Assessment of Functioning ("GAF") scores, stating that they are "only snapshots in time and do not provide a reliable longitudinal picture of the claimant's level of functioning." (AR 1390). Finally, ALJ Gontis gave limited weight to the "VA disability rating of 90% for such issues as PTSD, sleep apnea, IBS, and tinnitus," explaining that "VA disability claims operate on different rules" than claims for DIB and that "[t]his disability rating does not set forth specific work restrictions." (AR 1391).

At step four, ALJ Gontis found Mr. Gonzales was incapable of performing his

past relevant work as a heavy equipment operator, personnel specialist, recruiter or

runner. (AR 1391-1392). ALJ Gontis proceeded to step five, finding that on December

20, 2015, Mr. Gonzales was a "younger individual age 18-49." (AR 1392). He further

found that Mr. Gonzales has at least a high school education. (AR 1392). ALJ Gontis

found that considering VE Greiner's testimony and Mr. Gonzales's age, education, work

experience, and assessed RFC, that Mr. Gonzales could perform other work as a

dishwasher, janitor, or stocker. (AR 1393). After finding Mr. Gonzales was able to

perform other work existing in significant numbers in the national economy, ALJ Gontis

concluded he was "not disabled" as defined by § 20 C.F.R. § 404.1520(g). (AR 1393).

## V.    Analysis

In his Motion, Mr. Gonzales argues ALJ Gontis erred in four respects. First, Mr.

Gonzales argues ALJ Gontis failed to account for all the limitations found by state

agency consultants Dr. Cherry and Dr. Pearce. (Doc. 20 at 8). In particular, ALJ Gontis

did not adopt certain moderate mental limitations assessed by Dr. Cherry and Dr.

Pearce with regards to Mr. Gonzales's concentration, persistence, pace and

attendance, despite affording their opinions significant weight. *Id.* at 9. The

Commissioner, in turn, argues that there was no error, because ALJ Gonzales's RFC

assessment—in which he found Mr. Gonzales can perform simple, routine tasks and

have occasional social interaction, few changes in a routine work setting, and time off

task accommodated by normal breaks—reasonably accounted for the moderate

limitations assessed by Dr. Cherry and Dr. Pearce. (Doc. 26 at 11-12).

Mr. Gonzales also contends that ALJ Gontis failed to properly weigh the opinions

of Dr. Krueger. (Doc. 20 at 12). In particular, Mr. Gonzales argues that ALJ Gontis acted

improperly by discounting Dr. Krueger's opinion merely because he only examined Mr. Gonzales once, and because Dr. Krueger "did not provide a detailed explanation" of Mr. Gonzales's likely absenteeism. *Id.* at 14-15. Mr. Gonzales also contends that ALJ Gontis should have explained why he found Dr. Krueger's examination findings inconsistent with his opinion, and that Mr. Krueger's opinion is consistent with the record. *Id.* at 15-18. In response, the Commissioner argues that ALJ Gontis reasonably explained why he did not adopt Dr. Krueger's opinions, and that he complied with the regulations in doing so. (Doc. 26 at 13-17)

Next, Mr. Gonzales alleges that ALJ Gontis failed to apply the "treating physician rule" when considering the opinions of Dr. Davidson. (Doc. 20 at 20). Mr. Gonzales argues that Dr. Davidson's findings are supported by her own treatment notes, and that the opinions are consistent with the record. *Id.* at 21-24. The Commissioner, meanwhile, argues that ALJ Gontis reasonably discounted Dr. Davidson's conclusions, and that it should be evident to the Court why ALJ Gontis declined to afford controlling weight to Dr. Davidson's opinions. (Doc. 26 at 18-19). The Commissioner argues that Mr. Gonzales's argument is essentially an attempt to have the Court reweigh the evidence. *Id.* at 20.

Finally, Mr. Gonzales alleges ALJ Gontis erred by ignoring the Appeals Council mandate vacating the prior decision. (Doc. 20 at 24). Specifically, Mr. Gonzales alleges that ALJ Gontis erroneously relied upon VE King's vocational testimony from the prior hearing, even though the prior decision was vacated, and that in the most recent hearing ALJ Gontis improperly declined to ask VE Greiner any questions regarding Mr. Gonzales's past relevant work or hypothetical questions regarding the available jobs in

the national economy. *Id.* at 25. Mr. Gonzales argues that ALJ Gontis's decision is therefore not supported by substantial evidence. *Id.* at 25. The Commissioner, in turn, contends that ALJ Gontis complied with the Appeals Council's order because the Appeals Council did not specifically "order the ALJ to take additional vocational expert testimony, and this order and the prior district court remand order did not identify any concerns with [VE King's] 2018 testimony." (Doc. 26 at 21).

A.    *ALJ Gontis's Assessment of Dr. Davidson's Opinion*

Mr. Gonzales contends that ALJ Gontis failed to properly apply the "treating physician rule" when considering Dr. Davidson's opinions, specifically by skipping the first step under the treating physician analysis and going directly to the second, at which point ALJ Gontis gave reasons for affording only limited weight that Mr. Gonzales contends are neither specific nor legitimate. (Doc. 20 at 20-21).  In particular, Mr. Gonzales argues that ALJ Gontis erred by affording Dr. Davidson's opinions less weight due to their being offered on checkbox forms, since they are "reasonably supported by her treatment notes" and consistent with the record. *Id.* at 21-24.

In response, the Commissioner argues that ALJ Gontis reasonably discounted Dr. Davidson's conclusions, and that Mr. Gonzales "seeks to elevate form over substance" in objecting to ALJ Gontis's failure to complete the first step of the treating physician analysis, because the Court can deduce from ALJ Gontis's discussion that "in finding [Dr. Davidson's] opinions deserving of little weight, [ALJ Gontis] also concluded they were not deserving of controlling weight." (Doc. 26 at 19). The Commissioner argues that it was proper for ALJ Gontis to discount Dr. Davidson's opinions due to their format of checkbox-style forms, and that ALJ Gontis adequately explained why he found

Dr. Davidson's opinions to be inconsistent with her treatment notes and the record. *Id.*
at 20.

Although an ALJ is not required to discuss every piece of evidence, he is
required, at a minimum, to evaluate and weigh every medical opinion in the record.
*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R.
§§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)); *see also* 20 C.F.R. §404.1527(b)-(c); SSR 06-
03p, 2006 WL 2329939. Every medical source opinion should be weighed by the ALJ in
consideration of the following "deference factors": (1) the length of the treatment
relationship and the frequency of examination; (2) the nature and extent of the treatment
relationship, including the treatment provided and the kind of examination or testing
performed; (3) the degree to which the physician's opinion is supported by relevant
evidence; (4) consistency between the opinion and the record as a whole; (5) whether
or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the
opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003); *see also* 20
C.F.R. §§ 404.1527(c)-(d), 416.927(c)-(d).

Ultimately, the ALJ must give good reasons that are "sufficiently specific to [be]
clear to any subsequent reviewers" for the weight that they ultimately assign the
opinions. *Langley*, 373 F.3d at 1119 (citation omitted). Failure to do so constitutes legal
error. *See Kerwin v. Astrue*, 244 Fed. App'x 880, 884 (10th Cir. 2007) (unpublished);
*see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

In addition, treating sources are generally entitled to more weight than other

sources, given their treatment relationship with the claimant.[2] 20 C.F.R. §
404.1527(d)(2). Accordingly, ALJs must follow a particular two-step process when
evaluating and weighing opinions from treating sources. 20 C.F.R. § 404.1527(b); *see
Watkins*, 350 F.3d at 1300-01. First, the ALJ must determine whether the treating
source's opinions were "well-supported by medically acceptable clinical and laboratory
diagnostic techniques," and "consistent with the record as a whole." 20 C.F.R.
§§ 404.1527(c)(2), 416.927(c)(2). If the treating source's opinions satisfy these criteria,
they are entitled to controlling weight. *Id.*

　　If a treating source's opinions are not entitled to controlling weight, they are still
entitled to deference. SSR 96-2p, 1996 WL 374188, at *4. In deciding the weight to
afford a treating source's opinion, the ALJ must consider the factors set forth in 20
C.F.R. § 404.1527(c)(1-6). The ALJ must "make clear how much weight the [treating
source's] opinion is being given (including whether it is being rejected outright) and give
good reasons, tied to the factors specified . . . for the weight assigned." *Krauser*, 638
F.3d at 1324 (citing *Watkins*, 350 F.3d at 1330); SSR 96-2p, 1996 WL 374188, at *5 (an
ALJ must "give good reasons" that are "sufficiently specific to make clear to any
subsequent reviewers the weight" she gave to the opinion "and the reasons for that
weight"); *but see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (an ALJ is not
required to "apply expressly each of the six relevant factors in deciding what weight to

---

[2] The Social Security Agency issued new regulations regarding the evaluation of medical source
opinions, including the opinions of treating physicians, for claims filed on or after March 27,
2017. *See* "Revisions to Rules Regarding the Evaluation of Medical Evidence," 82 Fed. Reg.
5844-01, 2017 WL 168819 (Jan. 18, 2017); *compare* 20 C.F.R. § 404.1527 ("Evaluating opinion
evidence for claims filed before March 27, 2017"), *with* 20 C.F.R. § 404.1520c ("How we
consider and articulate medical opinions and prior administrative medical findings for claims
filed on or after March 27, 2017"). Because Mr. Gonzales filed his claim on September 9, 2015,
the prior regulations apply to this matter.

give a medical opinion"). Moreover, in rejecting a treating source's opinion, the ALJ

"may not make speculative inferences from medical reports" and may not reject the

opinion based on her own credibility judgments, speculation, or lay opinion. *McGoffin v.*

*Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002). Rather, an ALJ may only reject a

treating source's opinion based on outright contradictory medical evidence. *Id.*

An ALJ's reasoning is not sufficiently specific if they merely state an opinion is

unsupported by or inconsistent with the medical evidence without further explanation.

*Langley*, 373 F.3d at 1122-23; *see also Cagle v. Astrue*, 266 Fed. Appx. 788, 792-793

(10th Cir. 2008) (unpublished). In addition, "[a]n ALJ is not entitled to pick and choose

through an uncontradicted medical opinion, taking only the parts that are favorable to a

finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citations

omitted). Instead, an ALJ "must . . . explain how any material inconsistencies or

ambiguities in the evidence in the case record were considered and resolved." SSR 96-

8p, 1996 WL 374184, at *7. Further, the Commissioner may not rationalize the ALJ's

decision post hoc, and "[j]udicial review is limited to the reasons stated in the ALJ's

decision." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted).

### 1. Dr. Davidson's Opinions

Dr. Davidson completed her first assessment form detailing Mr. Gonzales's work-

related mental abilities in September 2016. (AR 1237-1239). She assessed various

moderate limitations in Mr. Gonzales's mental abilities, as well as four marked

limitations in his capacity for sustained concentration and persistence, including his

ability to maintain attention and concentrate for extended periods of time; perform

activities within a schedule, maintain regular attendance and be punctual within

customary tolerance; work in coordination with/or proximity to others without being distracted by them; and complete a normal workday and workweek without interruptions from psychological-based symptoms and perform at a consistent pace without an unreasonable number and unreasonable length of rest periods. (AR 1237). She also assessed two marked limitations on his capacity for social interaction, including his ability to interact appropriately with the general public; and his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (AR 1238). Additionally, Dr. Davidson found that Mr. Gonzales met the criteria for two disabling mental impairments: depressive, bipolar, and related disorders; and anxiety. (AR 1239-1240).

In March 2018, Dr. Davidson completed a second assessment. (AR 1249-1250). She again assessed three marked limitations in Mr. Gonzales's capacity for sustained concentration and persistence, including his ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerance; work in coordination with/or proximity to others without being distracted by them; and complete a normal workday and workweek without interruptions from psychological-based symptoms and perform at a consistent pace without an unreasonable number and unreasonable length of rest periods. (AR 1249). She also again assessed one marked limitation on his capacity for social interaction—specifically, his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (AR 1250). Dr. Davidson further opined that "Mr. Gonzales has severe, treatment refractory PTSD despite intensive therapy and much medication[,]" and that she "do[es] not believe he can sustain gainful employment." (AR 1250). In December

16

2018, Dr. Davidson also wrote a letter indicating that she concurred with Dr. Krueger's conclusions that Mr. Gonzales met the criteria for three disabling mental impairments: depressive, bipolar, and related disorders; anxiety; and trauma and stressor-related disorders. (AR 1633).

In September 2020, Dr. Davidson completed a third set of forms, indicating one extreme limitation and two marked limitations in Mr. Gonzales's capacity for sustained concentration and persistence, as well as a marked limitation in his capacity for social interaction. (AR 1815). Specifically, Dr. Davidson opined that Mr. Gonzales is extremely limited in his ability to complete a normal workday and workweek without interruptions from psychological-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (AR 1815). Dr. Davidson also again assessed marked difficulties in Mr. Davidson's ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerance; and his ability to work in coordination with/or proximity to others without being distracted by them. (AR 1815). Finally, Dr. Davidson again assessed a marked limitation in Mr. Gonzales's ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (AR 1815). She repeated verbatim her opinion regarding Mr. Gonzales's "severe, treatment refractory PTSD despite intensive therapy and much medication." (AR 1815). Again, Dr. Davidson also found that Mr. Gonzales met the criteria for trauma and stressor-related disorders. (AR 1817-1818). She also filled out another form evaluating Mr. Gonzales for depressive, bipolar and related disorders, but assessed only moderate limitations. (AR 1816).

Overall, on all three forms, over a period of four years, Dr. Davidson consistently assessed Mr. Gonzales with three at-least-marked limitations in his capacity for sustaining concentration and persistence, and one marked limitation in his capacity for social interaction. (AR 1237-1238; 1249-1250; 1815). Dr. Davidson has thus consistently opined that Mr. Gonzales has at least marked limitations in his ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerance; to work in coordination with, or in proximity to, others without distraction; and to complete a normal workday and workweek without interruptions from psychological-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (AR 1237, 1249, 1815). As of March 2018, she also consistently opined that Mr. Gonzales met the criteria for trauma and stressor-related disorders, (AR 1633, 1817-1818), and that his severe, treatment-resistant PTSD precluded him from working, (AR 1250, 1815).

### 2. ALJ Gontis's Mental RFC Assessment

In determining Mr. Gonzales's mental RFC, ALJ Gontis gave "[l]imited weight" to Dr. Davidson's September 2016 and March 2018 opinions, because her opinions are "offered on checkbox forms without any detailed explanation to support such level of restriction" and are "not supported by Dr. Davidson's treatment notes showing that the claimant was alert, oriented, cooperative, and polite with organized thought processes, good insight and judgment, normal cognition/memory, and no deficits in [] attention/concentration." (AR 1387). ALJ Gontis also found her opinions "not consistent with the record as a whole, including the lack of any regular emergency care or in-patient hospitalizations for mental health exacerbations; the evidence showing that he

scored a 29/30 on a mini-mental status examination, maintained good verbal skills, had appropriate grooming, and was alert, oriented, and cooperative; and his activities of daily living, such as caring for his children, caring for his dog, going out alone, attending his children's sporting events, shopping in stores, attending church, managing money (including paying bills and counting change), and doing household chores and yardwork." (AR 1387). For similar reasons, ALJ Gontis disregarded Dr. Davidson's letter concurring with Dr. Krueger. (AR 1388). ALJ Gontis did not specifically weigh Dr. Davidson's September 2020 opinion, but appears to have afforded it limited weight for similar reasons, in addition to being "internally inconsistent" as Dr. Davidson found marked and extreme limitations due to PTSD, but also found mild and moderate limitations in understanding and memory as well as adaptation. (AR 1388-1389). ALJ Gontis characterizes Dr. Davidson as a "medical provider" instead of as Mr. Gonzales's treating provider. (AR 1387).

As to Mr. Gonzales's physical RFC, ALJ Gontis found that Mr. Gonzales "has the residual functional capacity to perform a full range of work at all exertional levels." (AR 1383). ALJ Gontis's mental RFC determination includes a limitation to performing simple, routine tasks; occasional interaction with supervisors, co-workers and the public; and tolerating few changes in a routine work setting. (AR 1383). ALJ Gontis also determined that Mr. Gonzales's likely "[t]ime off task can be accommodated by normal breaks." (AR 1383). ALJ Gontis's RFC determination thus does not adopt Dr. Davidson's consistent and repeated findings that Mr. Gonzales has marked limitations in his ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerance; and to complete a normal workday and workweek

without interruptions from psychological-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (AR 1237, 1249, 1815). As such, ALJ Gontis was required to adequately explain why he omitted these limitations from his RFC determination. *See* SSR 96-8p, 1996 WL 274184, at *7 (explaining that if an ALJ's RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted).

### 3. Whether ALJ Gontis's Weighing of Dr. Davidson's Opinions Constitutes Error

When evaluating a treating physician's opinion, an ALJ must first determine whether the opinions were supported and consistent, and thus entitled to controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Even if the ALJ determines that the treating physician's opinion is not entitled to controlling weight, the ALJ must then consider whether the opinion should be rejected altogether, or assigned some lesser weight. *Id.* It is legal error to fail to make findings with respect to the first step of this two-step process. *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007); *Baiett v. Berryhill*, 1:16-cv-467 GJF, 2017 WL 5952190, at *8 (D.N.M. Nov. 30, 2017).

Here, the purpose of the remand on March 18, 2020, was to allow for the consideration of late-submitted evidence including Dr. Krueger's evaluation and opinion, as well as Dr. Davidson's concurring opinion. *Gonzales*, 2020 WL 1288469, at *7. ALJ Gontis acknowledged this, stating that the "Appeals Council has directed [him] to comply with the order of the District Court, which requires consideration of the evaluation and opinion from Robert Krueger, Ph.D., along with the concurring opinion [of] Elizabeth Davidson, M.D." (AR 1376). Since the case was remanded, Mr. Gonzales has submitted an additional consistent opinion from Dr. Davidson, dated September

2020. (AR 1815). Nowhere in the decision, however, did ALJ Gontis acknowledge that Dr. Davidson was Mr. Gonzales's treating provider, let alone address whether her opinions were due controlling weight.

The Commissioner does not appear to dispute that this failure constitutes error, but merely argues that it does not constitute harmful error because the Court can deduce from ALJ Gontis's discussion why he declined to grant Dr. Davidson's opinions controlling weight. (Doc. 26 at 19). The Court therefore finds that ALJ Gontis committed legal error. *See Bilton v. Berryhill*, 1:16-cv-109 GJF, at 19 (D.N.M. July 24, 2017) ("[the ALJ's] decision to assign [the treating provider's] opinions 'some weight' clearly indicates that she did not find them to be deserving of controlling weight. However . . . this approach does not satisfy the law since the treating physician rule consists of two distinct steps").

### 4. *Whether ALJ Gontis's Error Regarding Dr. Davidson's Opinions Constitutes Harmful Error*

An ALJ's error may be considered harmless in exceptional circumstances, "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). In the context of analyzing objective evidence, the Tenth Circuit "allow[s] the ALJ to engage in less extensive analysis where 'none of the record medical evidence conflicts with [his RFC] conclusion.'" *Wall v. Astrue*, 561 F.3d 1048, 1068-69 (10th Cir. 2009) (citing *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004)). It is clear that "when the ALJ does not need to reject or weigh

evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened." *Howard*, 379 F.3d at 947.

The Commissioner argues that ALJ Gontis properly found that Dr. Davidson's explanations of her findings were not extensive, and that her opinions were inconsistent with her own treatment notes and with the record. (Doc. 26 at 20). The Commissioner argues that ALJ Gontis thus did properly consider the factors in 20 C.F.R. § 404.1527(c)(2)(i)-(c)(6) when assigning a weight, rendering harmless any error in the first step of the analysis. *Id.* at 18-19. In particular, the Commissioner argues that ALJ Gontis noted that Dr. Davidson was a medical provider with an MD, and whose treatment notes were in the record, showing that he was aware she was a treating provider. *Id.* at 19.

a. *The Effect of ALJ Gontis's Error on the Weighing of Opinion Evidence*

First, ALJ Gontis's consideration of the other medical source opinions may have been different had he properly considered Dr. Davidson's opinions regarding Mr. Gonzales's mental limitations. For example, ALJ Gontis afforded little weight to the opinion of consultative examiner Dr. Krueger, as he "only examined the claimant once and did not provide a detailed explanation to support a finding that [Mr. Gonzales] would have regular absenteeism," and because his opinion was "not well-supported by Dr. Krueger's examination" or with the record. (AR 1387-1388). Dr. Krueger diagnosed Mr. Gonzales with severe, chronic PTSD; generalized anxiety disorder; and moderate to severe chronic major depressive disorder, among other conditions. (AR 1621-1622). Dr. Krueger also assessed Mr. Gonzales with "serious functional impairment" including marked limitations in his relationships with coworkers, supervisors, and the general

public; and moderate impairment with maintaining pace and persistence. (AR 1622).

Finally, Dr. Krueger, like Dr. Davidson, found that Mr. Gonzales was likely to be

inconsistent with his work performance and likely to often be absent from work, due to

his "chronic psychiatric disorders." (AR 1622). Had ALJ Gontis properly considered Dr.

Davidson's findings, he may have afforded Dr. Krueger's consistent opinion more

weight.

Dr. Davidson's opinion is also consistent with the opinions of Dr. Cherry and Dr.

Pearce, who assessed Mr. Gonzales with moderate limitations in his ability to perform

activities within a schedule, maintain regular attendance and be punctual within

customary tolerance; to work in coordination with, or in proximity to, others without

being distracted by them; and to complete a normal workday and workweek without

interruptions from psychological-based symptoms and to perform at a consistent pace

without an unreasonable number and length of rest periods. (AR 119). These findings

are consistent with Dr. Krueger's assessment of likely absenteeism. (AR 1622). ALJ

Gontis may thus have weighed Dr. Krueger, Dr. Pearce and Dr. Cherry's opinions

differently in light of Dr. Davidson's opinion, if he had properly applied the treating

physician rule.

*b.  The Effect of ALJ Gontis's Error on the RFC Assessment*

ALJ Gontis found that Mr. Gonzales's time off task could be accommodated by

normal breaks, (AR 1383), and that Dr. Krueger's findings regarding likely absenteeism

and inconsistent work performance were not well-supported or consistent with the

record as a whole, (AR 1387-1388). However, Dr. Krueger's findings *were* consistent

with the findings of Mr. Gonzales's treating physician, as well as consulting providers

23

Dr. Pearce and Cherry, regarding his capacity for completing a normal work week. *See* (AR 119, 1622, 1815). Given the foregoing evidence, therefore, a reasonable factfinder could conclude, for instance, that Mr. Gonzales may experience good days and bad days due to his combination of severe mental impairments, which could account for some mild to normal findings while still resulting in his missing more than four days of work per month. Mr. Gonzales's capacity for attendance is part of his RFC. *See* 20 C.F.R. §§ 404.1545(c), 416.945(c); 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00E3; *see also Markham v. Califano*, 601 F.2d 533, 534 (10th Cir. 1979). The extent to which Mr. Gonzales can work, and the ultimate question of disability, must be determined in light of that restriction. *See* 15 SSR 85-16, 1985 WL 56855, at *2. If ALJ Gontis had properly considered Dr. Davidson's opinion, he may have afforded more weight to Dr. Krueger, Dr. Pearce and Dr. Cherry's findings, resulting in a more restrictive assessment of Mr. Gonzales's mental RFC including a limitation on his capacity for attendance.

The Commissioner cites *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012), for the proposition that an opinion's checkbox-style format is a valid reason to disregard it. (Doc. 26 at 19). In *Chapo v. Astrue*, however, the form at issue lacked any functional findings, whereas the forms filled out by Dr. Davidson specifically include findings regarding residual functional ability. *Chapo*, 682 F.3d at 1289; *see* (AR 1237-1238; 1249-1250; 1815). The proper analysis, in fact, is whether Dr. Davidson's checkbox form findings are supported by the rest of the record. *See Landon v. Berryhill*, 1:18-cv-309 CG, 2018 WL 6788526, at *8 (D.N.M. Dec. 26, 2018) ("medical source opinions on check-box forms are not improper if they are supported by substantial evidence, either on the form itself or elsewhere in the record").

The Commissioner argues that ALJ Gontis reasonably concluded that Dr. Davidson's opinions were not supported by her own treatment notes or consistent with the record, and were not supported by detailed explanations on the forms themselves. As discussed above, however, the Court finds that Dr. Davidson's opinions are indeed consistent with the opinions of Dr. Krueger, Dr. Pearce and Dr. Cherry. Dr. Davidson's opinions on Mr. Gonzales's ability to complete a normal workday or work week are also consistent with Dr. Chavez's observation on January 18, 2016, that he gets panic attacks "3-5 times per week." In addition, Dr. Davidson's treatment notes include numerous consistent observations. For example, on November 12, 2014, she reported Mr. Gonzales was "not feeling well at all," had recently had a "bad panic attack," and was unable to even make eye contact. (AR 583). Dr. Davidson also observed that Mr. Gonzales was "very anxious" and "depressed" and that his symptoms continued to be "very severe" and that they were complicated by his physical pain. (AR 584). At that time, he was only working "intermittent[ly]."(AR 583). On March 18, 2016, Dr. Davidson observed that Mr. Gonzales remained "very symptomatic." (AR 721). Dr. Davidson also consistently noted that Mr. Gonzales was constantly contemplating suicide, and explained in both her 2018 and 2020 opinions that his "severe" PTSD symptoms continued "despite intensive therapy and much medication." *See* (AR 584, 1041, 1250, 1815).

ALJ Gontis was not entitled to pick and choose through Dr. Davidson's treatment notes, taking only the parts that are favorable to a finding of nondisability. *Haga*, 482 F.3d at 1208. Instead, he was required to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-

8p, 1996 WL 374184, at *7; *Clifton*, 79 F.3d at 1009-10 (stating substantial evidence requires an ALJ discuss "uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects," and the evidence supporting his decision) (citation omitted). This error is especially concerning in this case, where ALJ Gontis afforded only limited or partial weight to every medical opinion in the record relating to Mr. Gonzales's mental limitations, except those of Dr. Cherry and Dr. Pearce, and where he declined to adopt even the consistent moderate mental limitations assessed by these providers. (AR 1386-1391); *Finley v. Berryhill*, 1:17-cv-698 SCY, 2019 WL 1118138, at *10 (D.N.M. Mar. 11, 2019) ("An ALJ, who is not a medical provider, must rely on medical providers to determine a claimant's medical condition.").

ALJ Gontis's failure to properly consider the treating provider's opinion leaves the Court with no guidance to meaningfully review ALJ Gontis's analysis of (1) the proper weight to afford the opinions of the medical sources on Mr. Gonzales's mental limitations, or (2) Mr. Gonzales's mental limitations in the context of his RFC. Therefore, ALJ Gontis's failure to properly consider Dr. Davidson's opinion, even merely to explain why he declined to afford it controlling weight, constitutes harmful and reversible error. *Ledford v. Barnhart*, 197 F. App'x 808, 811 (10th Cir. Oct. 19, 2006) ("The failure to apply the correct legal standard[s] or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal.") (citations omitted). The Court thus finds that remand is appropriate. Because the Court finds these reasons alone constitute harmful error mandating remand, the Court will not address the parties' arguments regarding additional errors.

26

## IV.    Conclusion

For the foregoing reasons, the Court finds ALJ Gontis committed harmful legal error when he failed to discuss whether Mr. Gonzales's treating physician was entitled to controlling weight. Because the Court finds this is a harmful error, the Court will not address the parties' remaining arguments.

**IT IS THEREFORE ORDERED** that Mr. Gonzales's *Motion to Reverse and Remand for a Rehearing With Supporting Memorandum*, (Doc. 20), is **GRANTED** and this case is **REMANDED** for further proceedings consistent with this opinion.

**IT IS SO ORDERED**.

_____

THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE